NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FLAVIO ORDONEZ, JR., | : |
| Plaintiff, | : Civ. No. 22-5523 (CCC) (MAH) |
| v. | : |
| | : **OPINION** |
| DEPARTMENT OF CORRECTIONS, et al., | : |
| Defendants. | : |

**CLAIRE C. CECCHI, U.S.D.J.**

Flavio Ordonez, Jr. ("Plaintiff"), a pretrial detainee at Hudson County Correctional Center, commenced a lawsuit pursuant to 42 U.S.C. § 1983 stemming from allegedly unconstitutional conditions related to COVID-19 protocols at two New Jersey Department of Corrections ("DOC") facilities (Bayside State Prison ("BSP") and Tully House), and his alleged exposure to the COVID-19 virus. ECF No. 1. He also moves to proceed *in forma pauperis* ("IFP") (ECF No. 1-1) and for the appointment of pro bono counsel (ECF No. 2). For the reasons set forth below, Plaintiff's motion to proceed IFP is granted, his motion to appoint pro bono counsel is denied without prejudice, and his complaint is dismissed without prejudice.

**I.     IFP**

A prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the filing fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(a)(2). Plaintiff has complied with these requirements and demonstrated indigence. ECF No. 1-1. Accordingly,

IFP status is appropriate, and Plaintiff's IFP motion is granted. The Court will now screen the complaint as required. *See* 28 U.S.C. § 1915A(a).

## II. THE COMPLAINT

### A. Factual Allegations[1]

In approximately February 2020, Plaintiff contracted COVID-19 while incarcerated at BSP. ECF No. 1 at 6. During this time, he alleges that the prison failed to follow guidelines "set in place" by the Centers for Disease Control and Prevention ("CDC") "to safeguard [Plaintiff] and other [inmates]." *Id.* Specifically, Plaintiff alleges that he was "house[d] in Unit 2 for three months COVID free" until "dozen[s] [of] inmates came to the camps from [BSP]." *Id.* Soon thereafter, Plaintiff asserts that there was a COVID-19 outbreak. *Id.* "The entire camps were shutdown," and inmates were purportedly fed in their rooms. *Id.* The complaint alleges that "camp units were shuffled around" and "when [inmates] ask[ed] the officers [why,] [they] were told, '[t]o build your immune system.'" *Id.* Plaintiff asserts that the outbreak worsened and he too tested positive for COVID-19 in February 2020. *Id.* He alleges that, while the inmates were temperature checked, there was no hand sanitizer, there was no contact tracing, and officers "wore masks in spurts, never consistent[ly]." *Id.* at 7. Following his exposure, Plaintiff was allegedly sick for roughly 10 days. *Id.* He claims to have experienced "loss of appetite, no taste, diarrhea, fatigue, and brain fog." *Id.* Plaintiff states that he "thought [he] was going to die and [he] didn't get any treatment to comfort [him] or combat COVID." *Id.* He further alleges that "everyone was ordered back to work on the last week of February." *Id.*

Plaintiff alleges that he then "went to Bo Robinson Assessment Center for approximately 90 days." *Id.* Thereafter, he "went to Tully House," where he remained from approximately July

---

[1] The factual allegations made in the complaint will be accepted as true for screening purposes.

2021 through March 2022. *Id.* During his time at Tully House, Plaintiff claims that "there was no medical provider or staff throughout [his] whole stay." *Id.* He "began feeling the same symptoms all over except [his] breathing w[as] complicated, and [he] had bad severe back pain and joint aches." *Id.* He purportedly "tested positive again" for COVID-19. *Id.* As a result, Plaintiff claims he "was discriminated [against] for catching COVID," as he "and approximately 12 inmates w[ere] sent to Rahway Prison to quarantine." *Id.* Plaintiff asserts that he "was with maximum security inmates and [his] status was full minimum." *Id.* After 17 days, he "was sent back to Tully [H]ouse" where he "caught a blue sheet" (*i.e.*, he was charged with violating jail regulations) and "was sent to Northern State Prison." *Id.* He "maxed out May 3, 2022" and "was found not guilty on the blue sheet." *Id.*

Plaintiff allegedly "informed Jo[hn] Doe Correctional Officers about [his] concerns, qualms, and fears all to no avail[, c]onveying to them that [he] need[s] [a] mask, hand sanitizer, etc., as well as [his] disapproval of mixing inmates with COVID-19." *Id.* at 6. He also "filled out medical slips to no avail." *Id.*

**B.      The Claims**

Plaintiff asserts claims against the DOC and BSP for "the complete failure to adhere, or comply with the CDC [guidelines]" and "placing plaintiffs and other[s] in a near death experience[] during [a] global pandemic." ECF No. 1 at 4. He asserts claims against Tully House, a "satellite unit for the [DOC]," for failing to "prevent [him] from being subjected to further harm, more specifically [for] advocat[ing] [his] transfer to Rahway State Prison where [he] was exposed to maximum security inmates while suffering from COVID, placing [him] in more harm." *Id.* at 5.

He also asserts claims against John Doe Officers 1–10[2] for "allowing, facilitating, adhering to cruel and unusual punishment (ignoring CDC guidelines) where [Plaintiff] became severely ill." *Id*.

Plaintiff seeks $1,000,000 in damages and is "open to any and all injunctions the courts deem appropriate and necessary." *Id*. at 7.

## III.     DISCUSSION

### A.     Screening Standard

District courts must review civil complaints filed by prisoners, *see* 28 U.S.C. § 1915A(a), and dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, *see* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of

---

[2] Plaintiff lists the place of employment for these correctional officers as "Hudson County Jail." ECF No. 1 at 5. However, it appears this may be in error as he includes no allegations pertaining to that facility.

4

action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *Pro se* pleadings will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

    B.       Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, a supervisor can be liable if he or she enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489

5

U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010).  Second, a supervisor may be held liable if "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  A.*M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

  **C.**  **Analysis**

  As an initial matter, Plaintiff's claims against the DOC must be dismissed with prejudice because the DOC, as an arm of the State, is immune from suit under the Eleventh Amendment.  *See, e.g.*, *Graham v. New Jersey*, No. 21-20773, 2022 WL 4010856, at *5 (D.N.J. Sept. 2, 2022) ("New Jersey has not waived its Eleventh Amendment immunity and Congress has not abrogated the states' immunity from Section 1983 actions. . . . The DOC is an arm of the State and, as such, is entitled to Eleventh Amendment immunity to the same extent as the State."); *see also Fletcher v. Dep't of Corr.*, 856 F. App'x 359, 361–62 (3d Cir. 2021) ("[T]he District Court properly dismissed the [DOC] because it is immune under the Eleventh Amendment from this § 1983 action."); *Fox v. Bayside State Prison*, 726 F. App'x 865, 867–68 (3d Cir. 2018) ("The DOC is quintessentially an arm of the state.").

  Plaintiff's claims against BSP and Tully House must also be dismissed with prejudice because a correctional facility is not a "person" acting under color of state law and, therefore, is not amenable to suit under § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983".); *Rolle v. Essex Cnty. Corr. Facility*, No. 21-15198,

6

2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (finding Essex County Correctional Facility is not a "person" subject to § 1983 liability); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) finding (Hudson County Jail is not a "person" amenable to suit under § 1983).

As to John Doe Officers 1–10, construing Plaintiff's complaint liberally, he appears to assert claims against these correctional officers for unconstitutional conditions of confinement arising out of Plaintiff allegedly contracting COVID-19 while detained at BSP and Tully House. *See* ECF No. 1 at 5 (alleging John Doe Officers 1–10 "allow[ed], facilitate[ed], adher[ed] to cruel and unusual punishment (ignoring CDC guidelines) where [Plaintiff] became severely ill.").

The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). For the conditions "to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226; *see also Betts*, 621 F.3d at 256 (finding inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates").

An Eighth Amendment conditions-of-confinement claim contains both objective and subjective components. *Farmer*, 511 U.S. at 834. Under the objective component, a prisoner must allege that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Under the subjective component, a prisoner must allege that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ]

7

reasonably to the risk." *Id.* at 844–45.  In other words, the "prison official must both know of *and* disregard an excessive risk."  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (emphasis added).  Here, Plaintiff has not plausibly alleged conditions posing a risk of serious harm, or that the John Doe Officers knew of and disregarded such a risk.

As an initial matter, mere exposure or increased risk of exposure to COVID-19 cannot support a claim for cruel and unusual punishment.  *See Hope v. Warden York County Prison*, 972 F.3d 310, 329 (3d Cir. 2020) (rejecting petitioners' arguments that exposure to COVID was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").  Thus, Plaintiff has not plausibly alleged a viable conditions-of-confinement claim simply because he allegedly contracted COVID-19 while incarcerated at BSP and Tully House.

Further, Plaintiff's conclusory allegations that BSP failed to follow unspecified CDC guidelines, ECF No. 1 at 6, and that "there was no medical provider or staff throughout [his] whole stay" at Tully House, *id.* at 7, also do not plausibly allege a constitutional violation.  *See Iqbal*, 566 U.S. at 678 (finding complaint does not suffice if it offers merely "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557); *Manning v. Hudson County*, No. 17-3450, 2019 WL 1423262, at *6 (D.N.J. Mar. 29, 2019) ("Plaintiff fails to state a claim for relief because his allegations are vague and conclusory and contain too little factual matter for the Court to determine whether his civil rights were violated by Defendant."); *see also DeJesus v. Steinhart*, No. 21-01639, 2023 WL 2471342, at *6 (M.D. Pa. Mar. 10, 2023) ("Even accepting as true Plaintiff's allegations that Defendants were not completely compliant with

guidance of the [CDC] specific to correctional and detention facilities, these allegations do not support a claim of deliberate indifference.").

Moreover, the allegations are contradicted by Plaintiff's assertions that at BSP, "entire camps were shutdown," inmates were fed in their rooms, and inmates were temperature checked, ECF No. 1 at 6, and that, at Tully House, he was tested for COVID, *id.* at 7; *see also Henry v. Ferrell*, No. 21-1322, 2022 WL 1092927, at *4 (E.D. Pa. Apr. 12, 2022) (Plaintiff's "claim that the PICC was placed on lockdown due to inmates testing positive demonstrates the exact opposite [of deliberate indifference]—that prison officials *were* aware of the risk of COVID-19 and *did not* disregard it.") (emphasis in original)).

Plaintiff's allegations that (1) there was no hand sanitizer at BSP, (2) there was "disinfectant, only once a week," (3) there was no contact tracing, and (4) officers "wore masks in spurts, never consistent[ly]," *id.* at 7, also do not establish that conditions in BSP rose to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement. *See*, *e.g.*, *Cooper v. Miller*, No. 20-2430, 2022 WL 4654852, at *7 (M.D. Pa. Sept. 30, 2022) ("Plaintiff's disagreement with the steps that have been taken by Defendants at SCI Rockview to mitigate the risk of his exposure to COVID-19 is simply insufficient to plausibly allege a constitutional violation"); *Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022) ("Pumba alleges that Sergeant Kowal permitted a pod worker who tested positive for COVID-19 to clean Pumba's cell block without wearing a mask and presumably exposing Pumba to COVID-19. These allegations are insufficient to allege a plausible constitutional claim that Sergeant Kowal failed to adequately protect him from exposure to COVID-19."); *Jones v. County of Allegheny*, No. 21-1094, 2022 WL 2806779, at *6 (W.D. Pa. June 24, 2022) ("Simply because the execution of COVID-19 protocols may have

9

been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants.").

Plaintiff does not allege, for example, that no COVID-19 testing, quarantining, or facility cleaning was occurring. But imperfections in the testing and quarantining procedures—particularly in the challenging environment of a correctional institution with many competing security and logistical considerations—do not, without more, amount to unconstitutional conditions of confinement. *See*, *e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Hope*, 972 F.3d at 330 (noting the "challenges inherent in the detention setting"); *Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) ("Chapolini also does not sufficiently allege that prison officials at CFCF knew of and disregarded an excessive risk to his health and safety. Instead, he only states that he contracted COVID-19 and that he likely got it because quarantine protocols at CFCF were either inadequate or improperly followed. This is also inadequate to state a plausible claim because his COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation.").

Likewise, Plaintiff's allegation that Tully House transferred him to Rahway Prison for quarantine does not state a plausible claim for cruel and unusual punishment. *See Jones v. County of Allegheny*, No. 21-1094, 2022 WL 2806779, at *7 (W.D. Pa. Jun. 24, 2022) ("Because it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract Covid-19, and those who recover from Covid-19.").

Finally, even if Plaintiff had alleged a violation of a constitutional right, his § 1983 claim would fail because he has not plausibly alleged that the John Doe Officers acted with a culpable state of mind or were personally involved in that violation. His allegations fail to link any specific defendant to wrongdoing. Additionally, to the extent Plaintiff asserts that grievances he filed support a plausible inference of personal involvement, he is mistaken. *See* ECF No. 1 at 6 (alleging that he sought relief from the acts complained of by informing "Jo[hn] Doe Correctional Officers about [his] concerns, qualms, and fears all to no avail. Conveying to them that [he] need[s] [a] mask, hand sanitizer, etc., as well as [his] disapproval of mixing inmates with COVID-19."). "A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights." *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances); *Butler v. Penchishen*, No. 22-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability.").

In short, Plaintiff's complaint, as drafted, does not establish that his conditions of confinement at BSP and Tully House rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement. He also fails to allege the culpable state of mind or personal involvement of the John Doe Officers necessary to state a claim for relief pursuant to §1983. For these reasons, Plaintiff's claims will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). However, because the Court cannot state that amendment

would be futile as to the John Doe Officers, this dismissal will be without prejudice to the filing, within sixty (60) days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (noting that leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

Further, in light of the dismissal of the complaint, Plaintiff's motion to appoint counsel (ECF No. 2) will be denied without prejudice.

## IV. CONCLUSION

For the reasons stated above, (1) Plaintiff's motion to proceed IFP (ECF No. 1-1) is granted; (2) his complaint (ECF No. 1) is dismissed with prejudice as against the DOC, BSP, and Tully House, and without prejudice as against John Doe Officers 1–10; and (3) his motion for appointment of pro bono counsel (ECF No. 2) is denied without prejudice. Plaintiff may file a proposed amended complaint within sixty (60) days. An appropriate order follows.

Dated: May 26, 2023

        s/ Claire C. Cecchi
        **CLAIRE C. CECCHI, U.S.D.J.**